Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL[1]

| | | |
|---|---|---|
| LUIS FERMÍN GUTIÉRREZ; MARTINA ANTONIA PAULINO<br><br>Apelante<br><br>v.<br><br>ÓPTIMA SEGUROS, UNIVERSAL INSURANCE COMPANY, FULANO Y MENGANO DE TAL Y OTROS<br><br>Apelado | KLAN202500111 | *Apelación* procedente del Tribunal de Primera Instancia, Sala de San Juan<br><br>Caso núm. SJ2022CV04844 (805)<br><br>Asunto: Daños y Perjuicios |

Panel integrado por su presidente, el Juez Sánchez Ramos, el Juez Rivera Torres y el Juez Salgado Schwarz.

Sánchez Ramos, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 31 de marzo de 2025.

El Tribunal de Primera Instancia (TPI) desestimó por la vía sumaria una demanda de daños y perjuicios instada en contra de Universal Insurance Company ("Universal"), aseguradora del Departamento de Transportación y Obras Púbicas ("DTOP"). Según se explica en detalle a continuación, concluimos que erró el TPI, pues el récord no le permitía concluir que la cubierta de seguro provista por Universal no aplique al accidente objeto de la demanda.

I.

En **junio de 2022**, el Sr. Luis José Gutiérrez Fermín (el "Demandante") y su esposa, la Sa. Martina Antonio Paulino (juntos, los "Demandantes"), presentaron la acción de referencia, sobre danos y perjuicios (la "Demanda"). Alegaron que, mientras el

---

[1] El recurso fue asignado a este panel por virtud de lo dispuesto en la Orden Administrativa OAJP-2021-086, de 4 de noviembre de 2021, sobre Normas para la Asignación de Recursos Nuevos Previamente Presentados en el Tribunal de Apelaciones. Consecuentemente, este recurso, así como todo recurso futuro que surja del caso de referencia, pendiente ante el Tribunal de Primera Instancia, será atendido por los integrantes de este panel, quienes adjudicaron los correspondientes recursos anteriores (KLCE202400649 y KLCE202201141).

Demandante caminaba en una acera en el municipio de San Juan, este sufrió una caída, producto de la negligencia del DTOP, por lo cual debía responder Universal.

Al cabo de varios incidentes procesales, y **casi un año luego de presentada la Demanda**, en abril del 2023, Universal presentó una *Moción de Sentencia Sumaria Parcial* (la "Moción"). En esencia, planteó que no surgía de sus expedientes que hubiese expedido una póliza a favor del DTOP que cubriera los hechos o daños reclamados en la Demanda. Arguyó que el lugar de la caída no estaba incluido en los predios enumerados y cubiertos por la póliza de responsabilidad pública emitida a favor del DTOP (la "Póliza"). Universal anejó varios documentos a su solicitud, incluida una declaración jurada del Sr. Juan F. Dávila Soto, examinador legal de la propia aseguradora (el "Empleado"), en la cual aseveró que el incidente objeto de la Demanda no está cubierto por la Póliza.

En respuesta, los Demandantes le expusieron al TPI las dificultades que confrontaban en cuanto al descubrimiento de prueba. En específico, destacaron los contratiempos para coordinar la deposición del Ing. Julio E. Córdova Vargas, Director de la Oficina Regional de San Juan del DTOP, y una producción de documentos por conducto de dicho ingeniero. Cuestionaron la presentación de la Moción cuando aún el descubrimiento no había terminado. Solicitaron una orden dirigida a que se coordinara la deposición antes mencionada y la entrega de documentos. Además, solicitaron una orden que le permitiera contestar la solicitud de sentencia sumaria una vez se completara el descubrimiento de prueba.

El 20 de abril, el TPI emitió una *Orden*. En primer lugar, so pena de desacato, ordenó la comparecencia del Ing. Julio E. Córdova Vargas para ser depuesto. En segundo lugar, concedió un término de cinco días para coordinar la deposición y otro de diez días para la entrega de documentos. Finalmente, dispuso que "**se entretiene**

**[sic] la solicitud de sentencia sumaria hasta la culminación del descubrimiento de prueba".**[2]

El 11 de mayo, los Demandantes presentaron una *Demanda Enmendada*; indicaron que el DTOP negaba tener jurisdicción sobre la acera donde ocurrió la caída, y que dicha agencia certificó que era el Municipio de San Juan quien ostentaba jurisdicción sobre el lugar. Plantearon que el Municipio de San Juan había aceptado anteriormente tener jurisdicción sobre el lugar, aunque ahora en este pleito lo negaba.

El 2 de junio, Universal instó una *Contestación a Demanda Enmendada*. Alegó que, aunque tenía una cubierta de seguro expedida a favor del DTOP, esta no provee cubierta para los hechos alegados en la Demanda. Sostuvo que la caída no ocurrió en una acera, sino que el Demandante se tropezó con parte de la estructura de un edificio propiedad de Comercial Centers Management, cuya aseguradora era MAPFRE PRAICO.

Por su parte, el 30 de agosto de 2023, Óptima Seguros, aseguradora del Municipio de San Juan, interpuso una *Moción en Cumplimiento de Orden y Solicitud de Termino para Presentar Moción Dispositiva Según lo Resuelto en Dannelly González Meléndez v. Municipio de San Juan y Otros, 2023 TSPR 95*. Informó que el Municipio de San Juan no tenía jurisdicción sobre la acera donde ocurrió la caída, y que el escalón o murito que forma parte de una franja de hormigón le pertenecía al edificio comercial cercano, cuyo dueño es Commercial Centers Management, asegurado por MAPFRE PRAICO, quien transigió la reclamación de los Demandantes. Además, sostuvo que, en virtud de *González Meléndez v. Mun. San Juan*, 2023 TSPR 95, el Municipio no respondía por los daños

---

[2] Apéndice del recurso de apelación, pág. 419.

reclamados en la Demanda. Óptima solicitó un término de treinta días para interponer una moción dispositiva.

El 29 de septiembre, los Demandantes presentaron una *Moción en Solicitud de Reconsideración y/o (sic) en la Alternativa en Solicitud de Orden para Auscultar Posibilidad de Transacción y Otros Extremos.* Puntualizaron que el Municipio tiene la responsabilidad de tomar medidas para evitar causar daños ante la existencia de alguna situación peligrosa y mantener las calles y las aceras en condiciones de seguridad razonables para los transeúntes. Destacaron que existía controversia sustancial de hechos que impedía la resolución sumaria del pleito, debido a que se trató de inducir a error al TPI en cuanto a la jurisdicción del área del accidente.

Subsecuentemente, el 2 de noviembre de ese año, Óptima presentó una *Moción de Sentencia Sumaria.* Alegó que el vigente Código Municipal le confirió inmunidad a los municipios por reclamaciones de accidentes que ocurren en carreteras y aceras estatales, en virtud del Artículo 1.053 del Código Municipal, 21 LPRA sec. 7084, proveniente del derogado Articulo 15.005, de la Ley de Municipios Autónomos, 21 LPRA der. sec. 7001.

El 1 de diciembre, los Demandantes se opusieron a la solicitud de sentencia sumaria instada por Óptima. En síntesis, alegaron que existía controversia en cuanto a si el "murito" de la acera ubica o no en una acera de una carretera estatal. Destacaron que los peritos de las partes diferían en cuanto a la jurisdicción del "murito", si le pertenece a la acera o es parte estructural de un edificio privado adyacente.

El 1 de diciembre, los Demandantes presentaron una *Moción In Limine y/o Eliminatoria de Exbibits Inadmisibles Utilizados en Apoyo a Moción de Sentencia Sumaria.* Arguyeron que Óptima usó

varios exhibits en su solicitud de sentencia sumaria que contenían información errónea, distorsionada o incompleta.

Mediante una *Resolución* emitida el 6 de marzo de 2024, el TPI denegó la solicitud de sentencia sumaria de Óptima. El TPI consideró que los siguientes hechos estaban en controversia:

> 1. Si la esquina del muro con el que se tropezó y cayó el Sr. Gutiérrez, que se extiende a lo largo de la calle Torre de la Vega y la Avenida. Roberto H. Todd, le pertenece a Commercial 18, al Municipio de San Juan o al DTOP.
>
> 2. Si existe nexo causal entre los daños que sufrió el Sr. Gutiérrez y las deficiencias, defectos, y/o deterioro en la acera de la calle Torre de la Vega.
>
> 3. Si las certificaciones que emitió el Municipio de San Juan para el 2017 en el caso de Jessica Ortega son distintas a las certificaciones emitidas en el caso del Sr. Luis José Gutiérrez Fermín.
>
> 4. Si las certificaciones que emitió el Municipio de San Juan incluyen el área del murito donde ocurrió el accidente o simplemente la acera.
>
> 5. Si el Municipio de San Juan conocía de la existencia de una condición peligrosa.
>
> 6. Si el Municipio tenía la responsabilidad de reparar y/u ordenar la reparación del área elevada mediante una transición adecuada como se esperaría de un hombre prudente o razonable.
>
> 7. Si el Municipio responde por condiciones peligrosas adyacentes creadas por terceros que colindan con sus aceras.[3]

El TPI concluyó que persistían en ese momento controversias de hechos materiales que le impedían disponer del caso por la vía sumaria. Puntualizó que debía determinarse si el murito donde se cayó el señor Gutiérrez Fermín era un componente o no de la acera, quién era su titular y a quién le corresponde el cuidado y mantenimiento de dicha área.

Al cabo de varios incidentes procesales, el **20 de agosto de 2024**, las partes presentaron el *Informe Sobre Conferencia con Antelación al Juicio* (el "Informe de Conferencia"). En lo pertinente,

---

[3] Apéndice 14 del recurso de apelación, pág. 477.

los Demandantes plantearon que la Póliza no contiene declaración alguna sobre limitación de cubierta de responsabilidad pública por predios declarados o dejados de declarar. Al no detallar exclusión alguna que aludiera al caso de autos, los Demandantes afirmaron que dicha cubierta aplicaba en cualquier parte de Puerto Rico. Añadieron que en ningún lugar de la Póliza se indicaba que la cubierta de responsabilidad pública por daños corporales se limitaría a incidentes ocurridos en los locales declarados en el listado de "Premises" y que, en cualquier caso, en dicho listado, se incluyó una referencia a "Anywhere in the island of Puerto Rico".

Por su parte, Universal sostuvo que la Póliza especificaba los predios (*locations*) cubiertos, y que el lugar donde ocurrieron los hechos no figuraba en los predios enumerados. Por ende, reiteró que no tenía obligación alguna con su asegurado o con los Demandantes.

Luego de algunos trámites procesales, **el 12 de diciembre**, el TPI notificó una *Sentencia Parcial* (la "Sentencia"), mediante la cual desestimó la Demanda, con perjuicio, en cuanto a Universal. El TPI resaltó que los Demandantes no se habían opuesto a la Moción.

Inconformes, el 24 de diciembre, los Demandantes solicitaron la reconsideración de la Sentencia, lo cual fue denegado por el TPI mediante una Orden notificada el 16 de enero.

Inconformes, el 7 de febrero, los Demandantes presentaron el recurso de referencia; formularon los siguientes señalamientos de error:

> Primer Error:
> Erró el TPI al desestimar solidariamente la Demanda contra la recurrida Universal sin considerar la controversia establecida mediante prueba pericial contenida en el expediente judicial y no tomar conocimiento judicial del Informe Pericial que rebate la moción de sentencia sumaria.
>
> Segundo Error:
> Erró el TPI al atribuir credibilidad a la declaración jurada de Juan F. Dávila Soto en la moción de sentencia

sumaria y no permitir en un juicio la prueba pericial sobre cubierta de póliza que rebate la declaración jurada de la moción.

Tercer Error:
Erró el TPI al resolver la moción de sentencia sumaria mientras extendió el descubrimiento de prueba y lo mantuvo abierto para poderse contestar la moción de sentencia sumaria.

A solicitud de los Demandantes, paralizamos los trámites en el TPI. Además, le ordenamos a Universal presentar su alegato en o antes del 6 de marzo. Universal no compareció (ni solicitó prórroga) en el referido término, por lo cual resolvemos sin el beneficio de su comparecencia.

## II.

La sentencia sumaria es un mecanismo procesal que se utiliza para lograr la solución justa, rápida y económica de una controversia donde resulta innecesario celebrar un juicio en su fondo. *Meléndez González v. M. Cuebas, Inc.*, 193 DPR 100, 109 (2015). Este mecanismo procede cuando no existe una controversia real sobre hechos materiales. Un hecho es material cuando puede afectar el resultado de la reclamación de acuerdo con el derecho sustantivo aplicable. *Ramos Pérez v. Univisión*, 178 DPR 200, 213 (2010). La Regla 36 de Procedimiento Civil, 32 LPRA Ap. V, R. 36.3, llama a estos hechos esenciales y pertinentes.

La Regla 36 de Procedimiento Civil, *supra,* impone un número de requisitos tanto al proponente de la sentencia sumaria como al que se opone a la misma. La moción de sentencia sumaria debe contener: una exposición breve de las alegaciones de las partes, los asuntos litigiosos en controversia, la causa de acción sobre la cual se solicita la sentencia sumaria, una relación concisa y organizada en párrafos enumerados de todos los hechos esenciales y pertinentes sobre los cuales no hay controversia, con indicación de los párrafos o páginas de la prueba documental donde se establecen

los mismos, la argumentación del derecho aplicable y el remedio que se solicita.  32 LPRA Ap. V, R. 36.3(a).

De igual forma, la parte que se opone a la sentencia sumaria tiene que cumplir con las exigencias de la Regla 36.  En particular, debe enumerar aquellos hechos materiales de buena fe controvertidos y aquellos sobre los cuales no hay controversia.  En ambos casos, por cada hecho, se tiene que indicar los párrafos o páginas de la prueba documental que establecen o impugnan ese hecho.  32 LPRA Ap. V, R. 36.3(b).  Así pues, la parte que se opone a que se dicte sentencia sumariamente "no podrá descansar solamente en las aseveraciones o negaciones contenidas en sus alegaciones, sino que estará obligada a contestar en forma tan detallada y específica, como lo haya hecho la parte promovente".  32 LPRA Ap. V, R. 36.3(c).  Los hechos enumerados en la moción de sentencia sumaria que no sean debidamente controvertidos podrán considerarse admitidos. 32 LPRA Ap. V, R. 36.3(d).  De forma similar, "[e]l tribunal no tendrá la obligación de considerar aquellos hechos que no han sido específicamente enumerados".  Íd.

Claro está, cuando un tribunal evalúa y analiza una moción de sentencia sumaria, no está obligado a resolverlo apoyado únicamente en los documentos que se presentan con la moción, sino que se deben considerar todos los documentos en los autos en los que surja alguna admisión hecha por alguna de las partes.  *Const. José Carro v. Mun. Dorado,* 186 DPR 113, 130 (2912).  De haber alguna duda acerca de la existencia de una controversia sobre los hechos medulares y sustanciales del caso deberá resolverse contra la parte que solicita la moción, haciendo necesaria la celebración de un juicio.  *Rivera et al. v. Superior Pkg., Inc. et al.,* 132 DPR 115, 133 (1992). (Citas en el original suprimidas).

Además, la omisión en presentar evidencia que rebata aquella presentada por el promovente, no necesariamente implica que

procede dictar sentencia sumaria de forma automática. *Mun. de Añasco v. ASES et al.*, 188 DPR 307, 327 (2013); *Córdova Dexter v. Sucn. Ferraiuoli*, 182 DPR 541, 556 (2011); *González Aristud v. Hosp. Pavía*, 168 DPR 127, 138 (2006). Solo procede que un tribunal dicte sentencia sumariamente cuando, de las alegaciones, deposiciones, contestaciones a interrogatorios y admisiones ofrecidas, en unión a las declaraciones juradas y otra evidencia, no surja controversia real sustancial sobre algún hecho material y, además, proceda como cuestión de derecho. 32 LPRA Ap. V, R. 36.3(e). Es decir, "cuando surge de manera clara que, ante los hechos materiales no controvertidos, el promovido no puede prevalecer ante el derecho aplicable y el Tribunal cuenta con la verdad de todos los hechos necesarios para poder resolver la controversia". *Meléndez González*, 193 DPR a las págs. 109-110, citando a *Const. José Carro v. Mun. Dorado*, 186 DPR a la pág. 129 y a *Nieves Díaz v. González* Massas, 178 DPR 820, 868 (2010).

Por otro lado, "hay litigios y controversias que por la naturaleza de los mismos no hacen deseable o aconsejable el resolverlos mediante una sentencia dictada sumariamente, porque difícilmente en tales casos el tribunal puede reunir ante sí toda la verdad de los hechos a través de 'affidavits' o deposiciones". *Rosario v. Nationwide Mutual*, 158 DPR 775, 780 (2003), citando a *Soto v. Hotel Caribe Hilton*, 137 DPR 294, 301 (1994); *Elías y otros v. Chenet y otros*, 147 DPR 507, 521 (1999), citando a *García López v. Méndez García*, 88 DPR 363, 380 (1963). El "sabio discernimiento es el principio rector para [el uso del mecanismo de la sentencia sumaria] porque, mal utilizad[o], puede prestarse para despojar a un litigante de su día en corte, principio elemental del debido proceso de ley". *Mejías et al. v. Carrasquillo et al.*, 185 DPR 288, 300 (2012), citando a *MGMT. Adm. Servs. Corp. v. E.L.A.*, 152 DPR 599, 611 (2000);

véase, además, *Roig Com. Bank v. Rosario Cirino,* 126 DPR 613, 617 (1990).

### III.

Hemos revisado cuidadosamente el récord del caso de referencia y concluimos que el récord no le permitía concluir al TPI que el accidente objeto de la Demanda (el "Accidente") no estuviese cubierto por la Póliza.

Como cuestión de umbral, y contrario a lo razonado por el TPI, no es correcto que los Demandantes dejaran de oponerse oportunamente a la Moción. Poco tiempo luego de presentada, los Demandantes específicamente señalaron que debía posponerse su consideración hasta que culminara el descubrimiento de prueba, **a lo cual el TPI accedió**. No obstante, vigente una paralización del descubrimiento decretada por el TPI (Apéndice a la pág. 469), y sin que el TPI hubiese emitido una orden requiriendo una oposición a los Demandantes, dicho foro procedió a resolver la Moción y dictar la Sentencia.

Más importante aún, antes de que se notificara la Sentencia, los Demandantes sometieron al TPI un informe pericial, el cual específicamente contradice lo expuesto por Universal en cuanto a la cubierta de la Póliza. Además, meses antes de que se notificara la Sentencia, en el Informe de Conferencia, los Demandantes hicieron constar su teoría sobre por qué la Póliza sí cubría el Accidente. Por tanto, al momento de notificarse la Sentencia, y contrario a lo intimado por el TPI, el récord sí contenía la postura reiterada de los Demandantes en torno a lo planteado por Universal en la Moción.

En cualquier caso, aun si los Demandantes no se hubiesen expresado al respecto (lo cual no es el caso aquí), el TPI estaba impedido de dictar sentencia sumaria a menos que Universal le colocara en posición de concluir que la Póliza no cubría el Accidente, lo cual tampoco ocurrió. Veamos.

La Póliza, sobre *Commercial Property, General Liability, Commercial Crime and Fidelity* y *Commercial Inland Marine,* aunque para ciertos fines hace referencia a ciertas facilidades específicas del DTOP, también se extiende a "streets, roads, highways or bridges" que ubiquen "anywhere in the Island of Puerto Rico". Apéndice a las págs. 177-181.

Más aún, y según resaltado por el perito de los Demandantes[4], en la sección pertinente de la Póliza (sobre *Bodily Injury*), "no existe condición, limitación o exclusión alguna", según la cual el daño tenga que haber ocurrido en una de las facilidades incluidas de forma específica en la Póliza. Apéndice, pág. 638. Es decir, la Póliza, en cuanto a responsabilidad pública por daño corporal se refiere, sí se extiende a accidentes ocurridos a raíz de las operaciones del DTOP en cualquier lugar de Puerto Rico.

Aunque el Empleado declaró de forma escueta, bajo juramento, que la Póliza no cubre el Accidente, ello está controvertido por la interpretación del perito de los Demandantes y por el texto de la Póliza, por lo que el TPI no podía, de forma sumaria, concluir que la Póliza no cubre el Accidente simplemente porque el el mismo no ocurriese en una de las facilidades enumeradas en la Póliza.

En conexión, reiteramos que los jueces no están limitados a examinar hechos que se aduzcan o documentos anejados a la solicitud de sentencia sumaria y "[d]eben considerar todos los documentos en autos, sean o no parte de la solicitud, de los cuales surjan admisiones que hagan las partes". *Vera v. Dr. Bravo,* 161 DPR 308, 333 (2004). Asimismo, resaltamos que aligerar la tramitación de un caso no puede soslayar el principio fundamental de alcanzar una solución justa. *García Rivera et al. v. Enríquez,* 153

---

[4] Informe Sobre Póliza DTOP 09-560-000603046, Apéndice 21 del recurso de apelación, págs. 632-644.

DPR 323, 337-338 (2001); *Cuadrado Lugo v. Santiago Rodríguez,* 126 DPR 272, 279 (1990).

En fin, existe controversia en cuanto a si la Póliza provee cubierta por el Accidente. Ello depende de la interpretación de la Póliza, sobre lo cual hay posturas divergentes, que cada parte ha fundamentado, además de los otros hechos en controversia en torno a la titularidad de la estructura que causó el Accidente. Por tanto, la adjudicación de esta controversia tendría que aguardar por la evaluación, no solo de la Póliza, sino del testimonio pericial pertinente.

IV.

Por los fundamentos que anteceden, se revoca la *Sentencia Parcial* apelada y se devuelve el caso al Tribunal de Primera Instancia para trámites ulteriores compatibles con lo aquí expuesto y resuelto.

Lo acuerda y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones